```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
CAREMARK, L.L.C., CAREMARKPCS,
L.L.C., CAREMARK IPA, L.L.C.,
SILVERSCRIPT INSURANCE COMPANY, and
AETNA, INC.
```

                    Petitioners,                    **MEMORANDUM AND ORDER**

            - against -                              23 Civ. 8508 (NRB)

NEW YORK CANCER & BLOOD SPECIALISTS,

                    Respondent.
------------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

     Petitioners Caremark, L.L.C., CaremarkPCS, L.L.C., Caremark
IPA, L.L.C., SilverScript Insurance Company, and Aetna, Inc.
(collectively, "petitioners" or "Caremark") seek to file their
petition to vacate an arbitration award under seal; or, in the
alternative, partially under seal; or, in the second alternative,
with some redactions.  For the reasons stated below, petitioners'
motion is denied, and the case will be unsealed in full.


                            **BACKGROUND**


     Respondent New York Cancer & Blood Specialists ("respondent"
or "NYCBS") is a community cancer center with locations in New
York City and Long Island.  See Declaration of Jonathan E. Levitt
in Support of Respondent's Opposition to Petitioners' Motion to
Vacate Arbitration Award, Ex. A (Interim Award) at 2.  Caremark is

a Pharmacy Benefit Manager ("PBM"), which creates and manages pharmacy networks and prescription drug benefits on behalf of Medicare Part D plan sponsors.  Id.  On October 10, 2019, NYCBS commenced arbitration proceedings against petitioners to recover fees that petitioners allegedly improperly imposed on NYCBS.  Id. at 4.  On June 28, 2023, the arbitration panel ruled in favor of NYCBS on several claims and awarded it approximately $17,000,000 in damages as well as attorneys' fees and interest.  Id. at 34.

On September 27, 2023, petitioners filed a petition to vacate the arbitration award.  ECF No. 1.  In support of their petition, petitioners filed a memorandum of law and a voluminous record spanning thousands of pages that included nearly the full evidentiary record and briefing from the underlying arbitration. See Declaration of Neil Diskin in Support of Petition to Vacate Arbitration Award ("Diskin Decl."), Exs. 1-35.  Prior to filing their petition to vacate, petitioners filed a motion for leave to file the case under seal; or, in the alternative, to seal petitioners' memorandum of law in support of their petition to vacate, as well as the evidentiary record and briefing from the arbitration; or, in the second alternative, to redact proprietary information from the initiating documents in this matter.  See No. 23-mc-351(AS) ECF No. 1.

Judge Arun Subramanian, sitting in Part I, granted petitioners' motion and sealed the case in its entirety before giving NYCBS the opportunity to respond to the motion. ECF No. 1. Once the case was assigned to this Court, however, the Court allowed NYCBS the opportunity to respond to petitioners' sealing motion, which it did on October 12, 2023. ECF No. 6. Petitioners filed a reply in further support of their motion on October 19, 2023. ECF No. 7.

## DISCUSSION

It is well-established that there is a "general presumption in favor of public access to judicial documents." Collado v. City of New York, 193 F. Supp. 3d 286, 288 (S.D.N.Y. 2016).[1] In the Second Circuit, courts apply a three-step inquiry in deciding whether to permit judicial documents to be withheld from public view. See Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006). First, a court must determine whether the documents at issue are "judicial documents" to which the

---

[1] There are "two related but distinct presumptions in favor of public access to court proceedings and records: a strong form rooted in the First Amendment and a slightly weaker form based in federal common law." Newsday LLC v. Cnty. of Nassau, 730 F.3d 156, 163 (2d Cir. 2013). Because the Court concludes that petitioners are not entitled to seal the case under the less stringent common law standard, it need not determine whether it is also subject to the "more stringent" First Amendment presumption of access. Lytle v. JPMorgan Chase, 810 F. Supp. 2d 616, 621 n.5 (S.D.N.Y. 2011).

presumption of access attaches.  Id.  If so, the court then determines the weight of the presumption of access.  Id.  Finally, after determining the weight of the presumption of access, the court must "balance competing considerations against it," which include "the privacy interests of those resisting disclosure." Id. at 120.

First, the documents petitioners filed in support of their motion to vacate are "judicial documents" because they are undoubtedly "relevant to the performance of the judicial function and useful in the judicial process."  Id. at 119.  Second, these judicial documents are entitled to a strong presumption of access given that they "directly affect" the Court's adjudication of the petition to vacate.  Id. at 121.  Indeed, despite the Court's skepticism, petitioners have insisted that submitting such an expansive record was necessary to decide their motion to vacate.

Finally, against this strong presumption of public access, petitioners have failed to "articulate a compelling countervailing rationale for filing the documents under seal." Collado, 193 F. Supp. 3d at 289.  To overcome the presumption of access, petitioners first argue that the Court should seal the case, or at least large swaths of the record, pursuant to the confidentiality clause in the parties' arbitration agreement.  Mot. at 3-7.

-4-

However, "[c]ourts in this District have long held that bargained-for confidentiality does not overcome the presumption of access to judicial documents." Bernsten v. O'Reilly, 307 F. Supp. 3d 161, 168 (S.D.N.Y. 2018) (citing cases).   Therefore, petitioners' confidentiality clause argument fails.

Petitioners next argue that they should be permitted to seal or redact certain documents that purportedly contain trade secrets. Mot. at 9-12.  Petitioners have not shown, however, that any documents in the record contain trade secrets.  A trade secret is any "formula, pattern, device, or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." Sofitel, Inc. v. Dragon Med. & Sci. Commc'ns, 118 F.3d 955, 968 (2d Cir. 1997) (quoting Restatement of Torts § 757 cmt. b, at 5).  For one thing, petitioners fail to articulate with any specificity how disclosure would cause "a clearly defined and very serious injury" to their competitive position. Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc., 26 F. Supp. 2d 606, 613 (S.D.N.Y. 1998).  Rather, petitioners rely on blanket assertions such as that "[t]he competitive standing of [petitioners] will be severely prejudiced if this information enters the public sphere" because "Caremark's competitors can use [this information] to

their advantage." Mot. at 11. Such "vague and conclusory allegations will not suffice" to show proof of competitive harm. Encyclopedia Brown Prods., 26 F. Supp. 2d at 613.[2]

Additionally, the "most important consideration in determining whether information is a trade secret is whether the information was secret." Broker Genius, Inc. v. Zalta, 280 F. Supp. 3d 495, 514 (S.D.N.Y. 2017) (quoting Lehman v. Dow Jones & Co., 783 F.2d 285, 298 (2d Cir. 1986)). Much of the information that petitioners seek to seal or redact, however, is already in the public record. Indeed, in another case involving petitioners, the court refused to seal similar information for the same reason. See Caremark LLC v. AIDS Healthcare Foundation, 2022 WL 4267791, at *13 (D. Ariz. Sept. 15, 2022). Moreover, many of the documents that petitioners want redacted contain information that is up to seven years old. See, e.g., Diskin Decl., Ex. 12-A (Network Enrollment Forms from 2015 and 2016). Petitioners have not shown that disclosure of such "outdated and stale" information "would result in any competitive harm." In re Upper Brooks Cos., 22-mc-

---

[2] While the declaration of Caremark Vice President Steven McCall provides some specificity, it still does not provide the facts necessary to show that the information at issue constitutes a trade secret. See Declaration of Neil Diskin in Support of Motion to Seal, Ex. B.

97(PKC), 2023 WL 172003, at *6 (S.D.N.Y. Jan. 12, 2023).
Accordingly, petitioners' trade secrets argument fails.

Finally, petitioners' attempts to downplay the public
interest in this case are unpersuasive. Reply Br. at 2-4. The
underlying dispute involves petitioners' use of Medicare Part D
monies. Courts have recognized the public's "right of access to
court documents and its interest in knowing how its tax monies are
being spent in a matter of public importance." United States v.
Gerena, 703 F. Supp. 211, 214-15 (D. Conn. 1988), aff'd sub nom.
United States v. Suarez, 880 F.2d 626 (2d Cir. 1989). Furthermore,
the specific type of fees that are at the heart of this dispute
have been the subject of several government hearings and
investigations.[3] Therefore, there can be no question that the
public has a strong interest in the documents filed in this case.

---

[3] See, e.g., Federal Trade Commission, FTC Deepens Inquiry into Prescription
Drug Middlemen (May 17, 2023); Senate Finance Committee, Pharmacy Benefit
Managers and the Prescription Drug Supply Chain: Impact on Patients and
Taxpayers (March 30, 2023); House Oversight Committee, Comer Launches
Investigation into Pharmacy Benefit Managers' Role in Rising Health Care
Costs (Mar. 1, 2023).

## <u>CONCLUSION</u>

Taken together, these considerations compel the Court to deny petitioners' motion to seal in full.  The Clerk of Court is respectfully directed to unseal this case in its entirety.


**SO ORDERED.**

Dated:    New York, New York
          November 30, 2023

_____
     NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

-8-